Mary BOHAC, Personal Representative
of the Estate of Anne Bohac,
Deceased, Applicant and Appellee,

v.

John A. GRAHAM, Executive Director,
North Dakota Department of Human
Services, Respondent and Appellant.

Civ. No. 870189.

Supreme Court of North Dakota.

May 26, 1988.

Jake C. Hodny, of Hodny, Burke, Rice &
Stevenson, Grafton, for applicant and ap-
pellee.

Blaine L. Nordwall, Bismarck, for re-
spondent and appellant.

VANDE WALLE, Justice.

John Graham, as Executive Director of
the Department of Human Services [the
Department], appeals from a district court
judgment which reversed the Department's
determination that Anne Bohac was ineligi-
ble for medical assistance benefits. We
reverse the judgment of the district court
and remand for entry of judgment affirm-
ing the Department's decision.

Siblings Frank, Mary, and Anne Bohac
resided together on the family farm follow-
ing the death of their parents. Anne suf-
fered from multiple sclerosis, which had

been diagnosed in 1967. Upon learning that he had cancer, Frank executed a will dated May 22, 1975, which devised a quarter-section of farmland to Mary as trustee.[1] The relevant provision of this testamentary trust states:

"(d) The Trustee shall distribute all the net income annually unto my sister, Anne Bohac, and is further authorized to give my said sister any portion of the Trust Property as my said Trustee may deem necessary for her support, maintenance, medical expenses, care, comfort and general welfare."

Frank died on November 21, 1975. Anne subsequently required skilled nursing care and was placed in the Valley Memorial Home in Grand Forks. Mary, in her capacity as Anne's attorney-in-fact, filed an application for medical assistance benefits on Anne's behalf. The Grand Forks County Social Service Board denied benefits, concluding that the trust corpus was an available asset to Anne which made her financially ineligible for assistance. Anne appealed the denial to the Department and, following a hearing, the Department issued its decision determining that Anne was ineligible for benefits.

Appeal was taken to the District Court of Walsh County. Anne died on January 13, 1987, while the appeal was pending. Mary, as personal representative of Anne's estate, was substituted as a party. The district court reversed the decision of the Department, holding that the trust was a discretionary trust and that therefore the corpus was not an available asset.

The Department asserts on appeal that the trust is a support trust which is available to pay Anne's nursing home expenses.[2] Mary concedes that the nursing care received by Anne prior to her death was medically necessary and that there were no funds available other than the trust income to pay for that care. Mary does not argue that she, as trustee, would be justified in refusing to pay Anne's nursing home expenses if the trust is deemed to be a support trust. Mary also does not argue that, under those circumstances, the trust corpus would be unavailable to Anne. Mary contends, however, that the trust is a discretionary trust and that the Department's finding that it was a support trust is erroneous.

■■■ When an administrative agency decision is appealed to the district court and then to this court, we review the decision of the agency and not the decision of the district court. *Montana–Dakota Utilities Co. v. Public Service Commission*, 413 N.W.2d 308 (N.D.1987). We review the record compiled before the agency, rather than the findings of the district court. *Application of Zimbleman*, 356 N.W.2d 99 (N.D.1984). Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., and involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Otto v. Job Service North Dakota*, 390 N.W.2d 550 (N.D.1986); *Application of Zimbelman, supra.* In determining whether the agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D.1986).

■ The trust on its face includes elements of both a discretionary trust and a

---

**1.** Mary received other real and personal property under Frank's will. In addition, Mary was named the residuary beneficiary of the testamentary trust.

**2.** We wish to make it clear that this litigation involves only the availability of the trust corpus as an asset which limits Anne's eligibility for medical assistance. The income from the trust has been paid regularly to Anne, as required by the terms of the trust. When we discuss whether the trust is a discretionary trust or a support trust, we are referring only to that portion of the trust which authorizes invasion of the corpus.

support trust. The trustee is authorized to invade corpus "as my said Trustee may deem necessary" for the beneficiary's "support, maintenance, medical expenses, care, comfort and general welfare." The direction that the trustee invade corpus as she may deem necessary indicates an amount of discretion on the trustee's part. It does not, however, go as far as the typical provision in a discretionary trust that the trustee shall have "uncontrolled discretion" over payment to the beneficiary. See Restatement (Second) of Trusts § 155 (1959).

Similarly, although the trust language does suggest that invasion of the corpus is authorized for Anne's "support, maintenance, medical expenses," and "care," it goes further and also allows invasion of corpus for her "comfort and general welfare." Inclusion of provisions for items such as "comfort" and "general welfare" may take the trust language outside that of a general support trust. See Restatement (Second) of Trusts § 154 (1959), and comments thereto; see also, Abravanel, *Discretionary Support Trusts*, 68 Iowa L.Rev. 273, 293 n. 88 (1983).

■ We conclude that the trust language is ambiguous and requires consideration of extrinsic evidence to determine the settlor's intent.[3] The settlor's intent is crucial in determining the nature and extent of the beneficiary's interest in the trust. See Restatement (Second) of Trusts § 128 (1959).

■ After considering the language of the trust, the circumstances surrounding its creation, and testimony of the draftsman, the Department found that Frank's primary intent was to provide for Anne's future care:

"(3) The paramount intent of the appellant's brother in creating the trust was to provide for her future care, including medical care, and he was well aware at the time he created the trust that the appellant's condition would likely not improve, but would probably gradually deteriorate in time so as to require nursing home care.

"(4) Neither the trust document, nor the surrounding circumstances at the time it was drafted, suggest that the appellant's brother intended the trust corpus to be preserved for subsidiary beneficiaries at the expense of the general care of the appellant, nor do they suggest that the trust was intended to be supplementary to other sources of care, such as public assistance programs.

"(5) After considering the trust document from its four corners and in light of the circumstances existing at the time the trust was created, it is found that the trust was intended to be a general support trust and, as such, the appellant has the legal authority to compel the trustee to make payments that are reasonably necessary for that purpose, out of the trust corpus, if need be."

Mary asserts that the findings are not supported by a preponderance of the evidence. Mary particularly relies upon the

---

3. Some commentators have suggested that a "middle ground" exists between the classic support and discretionary trusts, a hybrid denoted as a "discretionary support trust" or a "semisupport trust." See Abravanel, *Discretionary Support Trusts*, 68 Iowa L.Rev. 273 (1983); Frolik, *Discretionary Trusts for a Disabled Beneficiary: A Solution or a Trap for the Unwary?*, 46 U.Pitt. L.Rev. 335, 342 (1985); Mooney, *Discretionary Trusts: An Estate Plan to Supplement Public Assistance for Disabled Persons*, 25 Ariz.L.Rev. 939, 944 (1983). These commentators suggest that a trustee of such a trust, while authorized to exert greater discretion than a trustee of a pure support trust, does not have complete discretion to refuse to provide any support whatsoever to the beneficiary. Rather, inclusion of the support language suggests an enforceable stan-

dard requiring the trustee to provide a minimum level of support to the beneficiary. *Bureau of Support v. Kreitzer*, 16 Ohio St.2d 147, 243 N.E.2d 83, 85–86 (1968); Abravanel, *Discretionary Support Trusts, supra*, 68 Iowa L.Rev. at 289–290; Frolik, *Discretionary Trusts, supra*, 46 U.Pitt.L.Rev. at 342.

The parties have not raised this issue and do not argue that the instant trust is a discretionary support trust. Applying the above standards, however, it is clear that Anne's concededly necessary nursing home care would fall within the enforceable standard of minimum support required under such a trust. We therefore deem it unnecessary in this case to determine whether a hybrid discretionary support trust would be recognized as such in this State.

testimony of the draftsman of Frank's will, which suggests that Frank would not have wanted the trust corpus consumed for Anne's care at the expense of the residuary beneficiaries of the trust. We believe that the bulk of the draftsman's testimony can best be categorized as speculation on what Frank might have intended had he foreseen this situation arising. The Department was entitled to give the draftsman's testimony as much or as little weight as the Department felt it deserved.

As previously noted, our standard of review does not allow us to make independent findings of fact or substitute our judgment for that of the Department. We conclude that, upon the evidence presented, a reasoning mind could have reasonably concluded that Frank's primary intent was to provide support and care for Anne and that the trust created by Frank's will is a support trust. Therefore, we further conclude that the Department did not err in considering the trust corpus as an available asset when it denied medical assistance benefits.

The judgment of the district court is reversed. We remand for entry of judgment affirming the Department's decision.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.